**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore**

Civil Action No. 13-cv-01865-RM-KLM

THERESA PETEKEIWICZ,

     Plaintiff,

v.

CORPORAL TROY STEMBEL, in his official and individual capacities; and
TERRY WATTS, in his official and individual capacities; and
TOWN OF CASTLE ROCK,

     Defendants.

_____

ORDER
_____

     Plaintiff Theresa Petekeiwicz, an allegedly blind and disabled woman as defined in the

Americans with Disabilities Act (ECF No. 1, the "Complaint" at ¶¶ 10, 28), seeks to hold two

police officers and the town of Castle Rock ("Castle Rock") liable for the broken arm she sustained

when police officers Terry Watts ("Watts") and Troy Stembel ("Stembel") detained her in order to

undergo an emergency mental health evaluation.   This matter is currently before the Court on

three motions: Plaintiff's motion to amend her Complaint (ECF No. 33); Defendants' combined

motion for partial summary judgment under Fed. R. Civ. P. 56. (ECF No. 37); and Defendants'

motion to strike certain exhibits submitted by Plaintiff in opposition to Defendants' motion for

partial summary judgment (ECF No. 40).   With respect to Plaintiff's motion to amend, U.S.

Magistrate Judge Kristen L. Mix has issued a recommendation (ECF No. 44, the

"Recommendation") that the motion be denied and Plaintiff has submitted timely objections to the

Recommendation. (ECF No. 40.)

For the reasons stated below, the Court AFFIRMS and ADOPTS the Recommendation, OVERRULES Plaintiff's objections, and DENIES Plaintiff's motion to amend the Complaint. The Court further GRANTS Defendants' combined motion for partial summary judgment and DENIES Defendants' motion to strike as moot.

## I. LEGAL STANDARD

### A. Review of the Magistrate Judge's Recommendation

When a magistrate judge issues a recommendation on a dispositive matter, Federal Rule of Civil Procedure 72(b)(3) requires that the district court judge "determine *de novo* any part of the magistrate judge's [recommendation] that has been properly objected to." In conducting his review, "[t]he district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3). An objection to a recommendation is proper if it is filed timely in accordance with the Federal Rules of Civil Procedure and specific enough to enable the "district judge to focus attention on those issues – factual and legal – that are at the heart of the parties' dispute." *United States v. 2121 E. 30th St.*, 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting *Thomas v. Arn*, 474 U.S. 140, 147 (1985)). In the absence of a timely and specific objection, "the district court may review a magistrate's report under any standard it deems appropriate." *Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991) (citations omitted); *see also* Fed. R. Civ. P. 72 Advisory Committee's Note ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.").

**B.      Summary Judgment**

Summary judgment is appropriate only if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law.   Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem Coal Co., Inc.,* 41 F.3d 567, 569-70 (10th Cir. 1994).   Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or is so one–sided that one party must prevail as a matter of law.   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136 (10th Cir. 2000).   Once the moving party meets its initial burden of demonstrating an absence of a genuine dispute of material fact, the burden then shifts to the non-moving party to move beyond the pleadings and to designate evidence which demonstrates the existence of a genuine dispute of material fact to be resolved at trial.   *See 1-800-Contacts, Inc. v. Lens.com, Inc.,* 722 F.3d 1229, 1242 (10th Cir. 2013) (citation omitted).   A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable jury could return a verdict for either party.   *Anderson*, 477 U.S. at 248.   In considering whether summary judgment is appropriate, the facts must be considered in a light most favorable to the non-moving party.   *Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 461 (10th Cir. 2013) (citations omitted).

If a movant properly supports a motion for summary judgment, the opposing party may not rest on the allegations contained in her complaint, but must respond with specific facts showing a genuine factual issue for trial.   Fed. R. Civ. P. 56(e); *Scott v. Harris*, 550 U.S. 372, 380 (2007) (holding that "[t]he mere existence of some alleged factual dispute between the parties will not

3

defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact") (citation omitted).

Only admissible evidence may be considered when ruling on a motion for summary judgment. *Jaramillo v. Colo. Judicial Dep't*, 427 F.3d 1303, 1314 (10th Cir. 2005) (citation omitted) (holding that hearsay evidence is not acceptable in opposing a summary judgment motion); *World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985). Affidavits must be based on personal knowledge and must set forth facts that would be admissible evidence at trial. *Murray v. City of Sapulpa*, 45 F.3d 1417, 1422 (10th Cir. 1995) (quotations and citation omitted). "Conclusory and self-serving affidavits are not sufficient." *Id*. The Court will not consider statements of fact, or rebuttals thereto, which are not material or are not supported by competent evidence. Fed. R. Civ. P. 56(c)(1)(A), 56(e)(2), 56(e)(3). "[O]n a motion for summary judgment, it is the responding party's burden to ensure that the factual dispute is portrayed with particularity, without depending on the trial court to conduct its own search of the record." *Cross v. The Home Depot*, 390 F.3d 1283, 1290 (10th Cir. 2004) (internal quotation and citation omitted). The Court is "not obligated to comb the record in order to make [Plaintiff's] arguments for [her]." *See Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1199 (10th Cir. 2000). Further, Local Rule 7.1(e) provides that "[e]very citation in a motion, response or reply shall include the specific page or statutory subsection to which reference is made." D.C. Colo. L. Civ. R. 7.1(e).

## II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The facts as recited below are based on adequate citations to the record which would be

admissible at trial.   The facts are recited in a light most favorable to the non-moving party.

On the morning of August 9, 2012, Watts and Stembel went to Plaintiff's apartment after they received a report that Plaintiff had made suicidal statements to the receptionist at her church. (ECF No. 37-1, Petekiewicz Dep. at 91:1-15, ECF No. 37-4, Stembel Aff. at ¶ 3, ECF No. 37-5, Watts Aff. at ¶ 3.)   Upon confronting Plaintiff about the report they received, Plaintiff acknowledged that she was "under a lot of stress" because she was in the process of moving. (ECF No. 37-1, Petekeiwicz Dep. at 92:20-25, 93:18-20) but also informed the officers that she was not suicidal and did not require their assistance.   (*Id.* at 92:20-25, 93:24-94:5, 98:22-99:3.)   As Plaintiff, Watts and Stembel discussed the report the officers received, Plaintiff became agitated and disagreed vehemently with the report as it was described by the officers to her.   (*Id.* at 98:21 – 99:3.)   Following several minutes of argument, Plaintiff attempted to end the conversation by entering her home and closing her door on the officers.   (*Id.* at 99:19-23, 110:4; ECF No. 37-4, Stembel Aff. at ¶7; ECF No. 37-5, Watts Aff. at ¶7.)   As Plaintiff moved to close the door on the officers, Watts placed his foot in the doorway and grabbed Plaintiff's arm to draw her back outside from the threshold of the apartment.   (ECF No. 1 at ¶22; ECF No. 37-1, Petekiewicz Dep. at 105:16-25; ECF No. 37-5, Watts Aff. at ¶¶6-7.)   Plaintiff described at her deposition that Watts grabbed Plaintiff "gently" and, in her opinion, did not use excessive force.   (ECF No. 37-1, Petekeiwicz Dep. at 106:13-16, 107:23-24, 108:10-23.)   Plaintiff then began using foul language, referring to the officers as "devils" and cursing.   (*Id.* at 109:3-110:7; ECF No. 37-4, Stembel Aff. at ¶6; ECF No. 37-5, Watts Aff. at ¶6; ECF No. 37-6, Canova Dep. at 44:20-45:7.)   Stembel then performed an "arm bar takedown," grabbing Plaintiff by the arm, pushing her head forcibly to the

ground and wrapping her arm behind her back to restrain her.   (ECF No. 1 at ¶¶24-25; ECF No.

37-1, Petekeiwicz Dep. at 105:4-7, 106:18-23, 107:11-17; ECF No. 37-4, Stembel Aff. at ¶ 7; ECF

No. 37-5, Watts Aff at ¶ 7.)   During the course of the "takedown" performed by Stembel, Plaintiff

sustained a fracture to her humerus in her left arm.   (ECF No. 1 at ¶ 25, ECF No, 37-1,

Petekeiwicz Dep. at 106:23.)   Stembel placed Plaintiff in hand restraints with Watts' assistance

(ECF No. 37-4, Stembel Aff. at ¶ 8, ECF No. 37-5, Watts Aff. at ¶ 8), and she was taken for an

emergency mental health evaluation.

Plaintiff filed her initial complaint on July 13, 2013, against Stembel, Watts, and Police

Chief Jack Cauley ("Cauley") in their official and personal capacities and also against Castle Rock

alleging various state law and federal claims relating to the alleged excessive force Watts and

Stembel used when they detained her.   (ECF No. 1.)   Pursuant to the Scheduling Order entered in

this action, the parties have engaged in and completed discovery.   (ECF No. 17.)   The

Scheduling Order also specifies December 23, 2013, as the deadline to amend pleadings.   (*Id.* at

6.)   However, through correspondence with Defendants' counsel on May 19, 2014, it was brought

to the attention of Plaintiff's counsel that the Eighth Amendment claims she pleaded against

Stembel and Watts did not apply to the facts of this case since the alleged excessive force occurred

before Plaintiff was in custody.   (ECF No. 36-1, May 19, 2014, Correspondence at 2.)   As a

result of that correspondence, Plaintiff filed a motion to amend her complaint and to change her

claims for Eighth Amendment violations as against Watts and Stembel to state Fourth Amendment

claims.   Plaintiff filed her motion to amend on May 30, 2014, several months after the December

23, 2013, deadline for amendments had expired under the Scheduling Order.

Meanwhile, on June 13, 2014, Defendants' filed a combined motion for partial summary judgment, seeking the dismissal of all claims against all defendants except for the assault and battery claims against Stembel.   (ECF No. 37.)

Pursuant to this Court's Order of September 14, 2014, related to a joint stipulation by the parties, many of Plaintiff's claims were voluntarily dismissed with prejudice, and Cauley was dismissed from the case entirely.   (ECF No. 51.)   The remaining claims against the various Defendants are as follows: (1) Eighth Amendment claims against Stembel and Watts; (2) state tort battery claims against Stembel and Watts; (3) state tort assault claims against Stembel and Watts; and (4) what appears to be a claim for indemnification against the Town of Castle Rock (specifically against the self-insurance fund maintained by the Town).[1]

## III.   ANALYSIS

### A.   Plaintiff's Motion to Amend

In the Recommendation, Magistrate Judge Mix determined that because Plaintiff's motion to amend was not filed within the deadline prescribed by the Scheduling Order, Plaintiff would have to show "good cause" to satisfy the standard for modifying a scheduling order pursuant to Fed R. Civ. P. Rule 16(b)(4). (ECF No. 44 at 5.)   Magistrate Judge Mix applied a "two-step analysis," testing whether plaintiff could "first demonstrate to the court that [she] has 'good cause' for seeking modification of the scheduling deadline under Rule 16(b)(4).   If the movant satisfies Rule 16(b)'s 'good cause' standard, [she] must then pass the requirements for amendment under

---

[1]  In the introductory paragraph to the Complaint, Plaintiff alleges that this action arises under "the Due Process Clause of the Fourteenth Amendment."   (ECF No. 1 at 1.)   However, Plaintiff does not go on to plead a specific count in her Complaint for a violation of Due Process, nor does Plaintiff argue that she asserts a Due Process claim in any of the briefs that have been submitted to the Court or present any evidence in support of that claim.   The Court concludes that to the extent Plaintiff attempted to allege a Due Process claim, such claim has been abandoned by Plaintiff.

Rule 15(a). . . ."  *Pumpco, Inc. v. Schenker Intern., Inc.*, 204 F.R.D. 667, 668 (D. Colo. 2001).

Relying primarily on *Kron-CIS GmbH v. LS Indus., Inc.*, No. 12-1473-SAC, 2014 WL 1309068

(D. Kan. March 28, 2014), Magistrate Judge Mix determined that Plaintiff had not shown "good

cause" and that her motion to amend should be denied. Because Magistrate Judge Mix found that

good cause had not been shown, she did not reach the Rule 15(a) analysis, which would have been

the second step of the two-part test.

In her objection to the Recommendation, Plaintiff argues that the Tenth Circuit does not

require a party to show good cause under Rule 16(b)(4) when seeking to amend a complaint. (ECF

No. 49.)   Further, Plaintiff argues that even applying a good cause standard, the motion should

still be granted because the Complaint actually did state a claim for Fourth Amendment violations,

of which Defendants had notice, and the fact that she used the label of Eighth Amendment

violations is a mere "technical mistake[]."   (*Id.* at 3.)

Although the Tenth Circuit has not explicitly addressed the issue of whether Rule 16(b)(4)

should be applied in the specific context of requests to amend pleadings, I agree with the

Magistrate Judge's practice of applying Rule 16(b)(4)'s good cause standard as a threshold where

a request to amend a pleading is made subsequent to the applicable deadline in the scheduling

order.   *See Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1205 n.4 (10th Cir. 2006) (explaining that

the Court of Appeals "adopted a similar interpretation of Rule 16(b)([4])'s 'good cause'

requirement in the context of counterclaims asserted after the [pleading amendment] deadline"

(citation omitted)); *see also*, *e.g.*, *Colo. Visionary Acad. v. Medtronic, Inc.*, 194 F.R.D. 684, 688

(D. Colo. 2000) (denying an untimely motion to amend solely on the basis of a failure to establish

"good cause" within the meaning of Rule 16(b)(4)); *Nicastle v. Adams Cnty. Sheriff's Office*, No. 10-cv-00816-REB-KMT, 2011 WL 1465586, at *3 (D. Colo. Mar. 14, 2011), *adopted by* 2011 WL 1464588 (Apr. 18, 2011) ("Because the Court finds no good cause to amend the scheduling order, [it] will not address whether leave to amend is appropriate under Rule 15."). If good cause is not shown, the Court is not required to consider whether Rule 15(a) excuses that failure. *First City Bank, N.A. v. Air Capitol Aircraft Sales, Inc.*¸ 820 F.2d 1127, 1132 (10th Cir. 1987) ("We hold that a district court acts within the bounds of its discretion when it denies leave to amend for 'untimeliness' or 'undue delay.'").

To demonstrate good cause pursuant to Rule 16(b)(4), the moving party must "show that it has been diligent in attempting to meet the deadline[], which means it must provide an adequate explanation for any delay." *Strope v.* Collins, 315 F.App'x 57, 61 (10th Cir. 2009) (citation omitted); *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1205 n.4 (10th Cir. 2006). "Properly construed, 'good cause' means that scheduling deadlines cannot be met despite a party's diligent efforts . . . . Carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." *Colo. Visionary Acad. v. Medtronic, Inc.*, 194 F.R.D. 684, 687 (D. Colo. 2000) (internal quotation and citation omitted).

Having determined that the good cause standard of Rule 16(b)(4) is applicable, I apply that standard and agree with the Recommendation that Plaintiff has not shown good cause for her proposed amendment. Plaintiff does not assert "that new facts were developed during discovery that resulted in a need to amend." *Colo. Visionary Acad.*, 194 F.R.D. at 688. To the contrary, Plaintiff argues that the Fourth Amendment claims are derived from her allegations as they already

9

exist in the Complaint, and their label of Fourth instead of Eighth Amendment claims is a mere technical defect.   (ECF No. 49 at 4.)   "Nor is the need to amend based upon recent developments in the law."   *Colo. Visionary Acad.*, 194 F.R.D. at 688.   Although it may be true that Defendants would suffer minimal prejudice from Plaintiff's amendment, "surprise or prejudice to Defendants 'is not a traditional consideration in determining whether a party has been diligent . . . ."   *Cooper & Cooper, P.C. v. U.S. Bank Nat'l Ass'n*, No. 11-cv-00216-CMA-KLM, 2011 WL 5075563 at *2 (D. Colo. Oct. 26, 2011).[2]

Further, Plaintiff's motion to amend does not seek to rectify a mere "technical defect" as her pleadings make clear that she intended to assert an Eighth Amendment claim against Stembel and Watts.   Plaintiff's Complaint specifically alleges her "right to be free from cruel and unusual punishment under the Eighth . . . Amendment[] to the United States Constitution."   (ECF No. 1 at ¶ 34.)   Plaintiff again references the language of the Eighth Amendment in her second claim for relief under the Colorado Constitution.   (*Id.* at ¶ 42.)   Plaintiff also made specific reference to the Eighth Amendment in her "Statement of Claims" in the Scheduling Order, but did not reference the Fourth Amendment in that document.   (*See* ECF No. 17.)   Plaintiff's proposed amendment does not seek to rectify a technical glitch and labeling error changing the word "Eighth" to "Fourth," but instead requests a substantive, strategic shift from pursuing one avenue of liability against Stembel and Watts to a wholly different kind.   Because Plaintiff had all relevant facts at

---

[2] Defendants' lack of prejudice would be demonstrated by the briefs submitted on their motion for partial summary judgment, which fully address Plaintiff's claims as if they had been pleaded in the form of Fourth Amendment claims against Watts and Stembel.   (ECF No. 37 at 9-14; ECF No. 41 at 4-7.)   Nor do Defendants point out any other evidence they would have requested at discovery had Plaintiff's Complaint stated Fourth Amendment claims. Nevertheless, because I determine that Plaintiff has not shown good cause for her proposed amendment, it is unnecessary to address the arguments raised by Defendants in their motion for partial summary judgment relating to Plaintiff's potential Fourth Amendment claims.

her disposal that would have enabled her to correct her flawed Complaint well before the deadline set by the Scheduling Order, the choice her counsel made is dispositive of the issue.   Plaintiff was not diligent in seeking to amend her complaint and is unable to satisfy the "good cause" standard of Rule 16(b)(4).   Her motion to amend the Complaint is therefore denied.

**B.      Defendants' Motion for Partial Summary Judgment**

Turning to Defendants' motion for partial summary judgment, only Watts and the Town have moved to dismiss all claims as against them, and Stembel has moved to have the Eighth Amendment claim against him dismissed.

1. Eighth Amendment Claims

Plaintiff has alleged that Stembel and Watts violated Plaintiff's Eighth Amendment rights when they used excessive force in detaining her for an emergency mental health evaluation. (ECF No. 1 at ¶¶33-40.)   There is substantial Supreme Court jurisprudence distinguishing between claims brought under the Fourth and Eighth Amendments, such that the Fourth Amendment applies to claims arising in the context of an arrest, while the Eighth Amendment applies only to convicted and sentenced inmates.   *See Graham v. Connor*, 490 U.S. 386, 394 (1989) (applying the Fourth Amendment's "objective reasonableness" to an excessive force claim arising out of the plaintiff's arrest); *Hudson v. McMillian*, 503 U.S. 1, 6 (1992) (applying the Eighth Amendment's "malicious and sadistic use of force standard" in analyzing a sentenced inmate's excessive force claim); *Whitley v. Albers*, 475 U.S. 312, 318-22 (1986) (the Eighth Amendment "serves as the primary source of substantive protection to convicted prisoners . . . where the deliberate use of force is challenged as excessive and unjustified.").

11

The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."   U.S. Const. amend. VIII.   The cruel and unusual punishment clause is concerned with conditions of confinement after a formal adjudication of guilt.   *Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979).   "Where, as here, the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right 'to be secure in their persons . . . against unreasonable . . . seizures' of the person."   *Graham v. Connor*, 490 U.S. 386, 395 (1989).   *See also United States v. Lovett*, 328 U.S. 303, 317-18 (1946) ("[T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law.").

Plaintiff does not challenge conditions of confinement, and indeed Plaintiff does not argue in her response to Defendants' motion for partial summary judgment that the Eighth Amendment would apply to the facts before the Court.   (*See* ECF No. 39.)   Consequently, the Eighth Amendment's prohibition against cruel and unusual punishment does not apply to Plaintiff and those claims against Stembel and Watts are dismissed.[3]

---

[3] Because all of Plaintiff's remaining federal claims are dismissed by this Court, the Court loses its basis for original jurisdiction.   Pursuant to 28 U.S.C. § 1367(c)(3), this Court has discretion to "decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ."   Although this Court is able to address the question of whether it has jurisdiction *sua sponte*, it should be noted that neither party has suggested that this Court would lack jurisdiction if the federal claims are dismissed.   Because discovery in this case has already concluded, a trial date has already been set for June 15, 2015, and the case is otherwise very far along procedurally, the Court will exercise its discretion to maintain supplemental jurisdiction to keep the case in this Court.

2. <u>State tort claims against Watts</u>

In addition to the Constitutional violations Plaintiff alleges against Stembel and Watts, her Complaint also originally listed a host of alleged state law violations.   Although many of these claims were voluntarily dismissed by stipulation and an order of this Court, Plaintiffs claims for the torts of assault and battery remain.   (*See* ECF No. 51.)   In support of the remaining tort claims, Watts argues that these claims should be dismissed as against him pursuant to the Colorado Governmental Immunity Act ("CGIA").   C.R.S. § 24-10-101 *et seq.*   The CGIA provides that a public employee is immune from liability in any claim for injury which lies in tort or could lie in tort and which arises out of an act or omission of such employee occurring within the scope of his employment.   C.R.S. §24-10-118(2).   A public employee may only be liable for conduct committed within the course and scope of employment in the following two instances: (1) if the public entity has waived sovereign immunity under C.R.S. § 24-10-106; or (2) if the public employee's conduct was "willful and wanton."   C.R.S. § 24-10-110(5); *see Gray v. Univ. of Colo. Hosp. Auth.*, 284 P.3d 191, 198 (Colo. App. 2012) (to be labeled as "willful and wanton," an actor "must be consciously aware that their acts or omissions create danger or risk to the safety of others, and they then act . . .without regard to that danger or risk.").   Defendants argue that Plaintiff has no evidence that would tend to show that Watts' conduct was willful and wanton.   Defendants argue that the evidence instead shows that Watt's contact with Plaintiff was "gentl[e]" and that Plaintiff herself did not believe Watts' actions to constitute excessive force.   (ECF No. 37 at 15.)

In her opposition brief, Plaintiff argues that Watts' actions were willful and wanton either through his "initiation of force" by putting his foot in Plaintiff's door as Plaintiff attempted to close

it, or through his "failure to prevent Officer Stembel from using excessive force."   (ECF No. 39 at

10.)   As for Watts' alleged "initiation of force," the only evidence developed as to Watt's actions

is that he placed his foot in Plaintiff's doorway when she attempted to close her door on the

officers, that he grasped her right wrist in a manner that did not cause her injury and was "gentle"

as described by Plaintiff, and that he assisted Stembel in putting Plaintiff in hand restraints.   ( ECF

No. 37-1, Petekeiwicz Dep. at 106:13-16, 107:23-24, 108:10-23.)   As revealed by the evidence

submitted by the parties, including Plaintiff's own deposition testimony, there is no evidence that

would tend to show Watts engaged in actions which were "willful and wanton" under the CGIA.

     As for Plaintiff's argument that Watts' failure to stop Stembel was willful and wanton, this

was never pleaded by Plaintiff in her Complaint and is an impermissible new basis of liability.

Even if this defect were ignored, Plaintiff does not cite to any case law where a court found that the

failure to act constituted "willful and wanton" conduct under the CGIA.   *But see Whitcomb v. City

& County of Denver*, 731 P.2d 749 (Colo. App. 1986) (ruling that police officers' refusal to

transport a stranded motorist to her destination, which could have prevented a subsequent assault

on the woman, was not willful and wanton).   Further, Plaintiff does not cite to any evidence in

support of this claim.   In contrast, what evidence does exist in the record would show that the

injury Plaintiff sustained happened in mere moments, and so it is unlikely that Watts even had a

meaningful opportunity to intervene.   *See Martinez v. City & Cnty. of Denver*, No.

11-cv-00102-MSK-KLM, 2013 WL 5366980, at *5 (D. Colo. Sept. 25, 2013) (defendant police

officers had no duty to intervene where there was no "reasonable opportunity to intercede" to

prevent another officer's act of slamming a criminal suspect against a wall); *Thompson v. Boggs*,

14

33 F.3d 847, 857 (7th Cir. 1994) (where one officer tackled and cuffed plaintiff quickly, the "evidence established that [the other officer] did not have a realistic opportunity to prevent" the attack); *Gaudreault v. Municipality of Salem*, 923 F.2d 203, 207 n. 3 (1st Cir. 1990) (officer had no "realistic opportunity" to intervene where "attack came quickly and was over in a matter of seconds"); *O'Neill v. Krzeminski*, 839 F.2d 9, 11 (2d Cir. 1988) (no duty to intervene where "blows were struck in such rapid succession that [defendant officer] had no realistic opportunity to attempt to prevent them").   Citing no evidence to support her claim that Watts had a meaningful opportunity to prevent Stembel from using excessive force, Plaintiff fails to create a material issue of fact that would need to be resolved at trial, and so the remaining claims against Watts are dismissed.

### 3. Claims against Castle Rock

As pointed out by Defendants, Plaintiff's claim against Castle Rock is not a viable cause of action.   (*See* ECF No. 1 at ¶¶56-57.)   Defendants, however, have analyzed the allegations against Cauley as if they might relate to a § 1983 claim against Castle Rock, on the basis that claims against an individual in his official capacity are tantamount to a claim "against an entity of which an officer is an agent."   *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 690 n. 55 (1978); *Kentucky v. Graham*, 473 U.S. 159, 165 (1985).   In the Complaint, Plaintiff alleges that Cauley, as supervisor to Stembel and Watts, would be liable for inadequately training the officers, for inadequately supervising the officers, for acquiescing in or being deliberately indifferent to a custom that deprives citizens of their constitutional rights, and failing to establish a disciplinary regime that would have prevented the acts of excessive force committed by Stembel and Watts.   (*Id.* at

15

¶51(a)-(f).)   It is merely an intellectual exercise to engage in this analysis as the Complaint does not make any such allegations as against Castle Rock, and Plaintiff's claims against Cauley have been voluntarily dismissed with prejudice.   (*See* ECF No. 51.)   But to engage in the exercise briefly, even assuming the allegations against Cauley relate to a claim against Castle Rock, Plaintiff's claim against Castle Rock should still be dismissed.   Section 1983 liability only attaches "for [a municipality's] own unconstitutional or illegal policies," *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998), and Plaintiff has not produced any evidence that would show that her damages were suffered in the course of actions taken pursuant to any policy of Castle Rock.

In support, Plaintiff offers evidence which shows that Castle Rock has received fourteen complaints of its officers employing excessive force over the course of the past ten years—Watts and Stembel accounting for two and three of these complaints, respectively—none of which resulted in disciplinary action by Castle Rock against any officer.   (*See* ECF No. 39 at 11; ECF No. 39-1, Defendants' Interrogatory Responses; ECF No. 39-2, Colorado District Court civil docket; ECF No. 39-3, ACLU webpage; ECF No. 39-4, Critical Incident Report; ECF No. 39-5, Critical Incident Report.)   Without analyzing the admissibility of the evidence offered by Plaintiff in support of these statistics (Defendants' have moved to strike certain of these exhibits), and assuming arguendo that these numbers are accurate, this would not be sufficient to show a policy or custom of Castle Rock acquiescing to its police officers' use of excessive force.   Plaintiff's evidence only points to the existence of complaints lodged against officers including Watts and Stembel, but does nothing to show the merit or veracity of these complaints (other than the fact that

they did not lead to disciplinary action by Castle Rock or any other liability to Watts and Stembel).

Showing that Castle Rock received a mere fourteen complaints over the course of ten years, with

three complaints against Stembel and two complaints against Watts, none of which resulted in

liability for any officer, is not sufficient to establish "acquiescence in a longstanding practice or

custom which constitutes the 'standard operating procedure' of [Castle Rock]."   *Jett v. Dallas

Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989).

Plaintiff also argues that Watts and Stembel detained her pursuant to an unconstitutional

Castle Rock policy on detaining individuals for emergency health evaluations.   (*See* ECF No.

39-9, health policy.)   Specifically, Plaintiff argues that the policy does not require the officers to

find "probable cause in connection with a mental health detention."   (ECF No. 39 at 11-12.)

Plaintiff's contention is incorrect, as the first page of the policy[4] quotes C.R.S. § 27-10-105(1)(a),

which specifically requires that an officer have probable cause to take a person into custody for an

emergency health evaluation.   (ECF No. 39-9 at 1.)   The policy thus references the very language

Plaintiff argues to be absent.

Based on the foregoing, Plaintiff's claims against Castle Rock are dismissed.[5]

C.     **Defendants' Motion to Strike**

Defendants have moved to strike three exhibits attached to Plaintiff's brief in opposition to

---

[4] ECF No. 39-9 is the only policy cited. As noted, it contains the language which Plaintiff alleges it needs to contain. But the Court also notes that the only policy presented is for a time period which post-dates the relevant events.

[5] Plaintiff does not argue in her opposition to Defendants' summary judgment motion that Castle Rocks' liability would be premised on a failure to adequately train and supervise its employees.   However, this argument would also fail. Plaintiff has not identified any training which is inadequate.   Nor did Plaintiff depose any officers regarding their training.   Similarly, Plaintiff identifies no specific failure to supervise which led to the alleged violation of her constitutional rights.   Alternatively, to the extent that Plaintiff's claim against Castle Rock could be construed as one for the tort of negligent supervision, that claim must fail because there is no waiver of immunity for this type of claim under the CGIA.   *See* C.R.S. § 24-10-106(1)(a)-(h).

Defendants' motion for summary judgment.   (ECF No. 40.)   The three exhibits all relate to Watts' discharge of his service rifle at a suspect fleeing from the scene of a burglary on February 22, 2013, several months after the incident at issue in this case took place on August 9, 2012. (ECF Nos. 39-3, 39-4, 39-5.)   The three exhibits challenged by Defendants are used exclusively by Plaintiff in support of her claims against Castle Rock.   (ECF No. 40 at ¶2.)   Because the shooting described in Plaintiff's exhibits took place in February, 2013, several months after the time that Plaintiff alleges to have been injured, this event is irrelevant to the determination of Castle Rock's policies or practices at the time that Plaintiff alleges to have been injured on August 2012.   However, because this Court dismisses all claims against Castle Rock, it would be immaterial whether or not the Court would strike those exhibits.   Therefore, Defendants' motion to strike Plaintiff's exhibits in her opposition brief is denied as moot.

## IV.    CONCLUSION

Based on the foregoing, it is ORDERED that:

1.   Plaintiff's objections to the Recommendation (ECF No. 49) are OVERRULED;

2.   The Recommendation of the United States Magistrate Judge (ECF No. 44) is APPROVED and ADOPTED;

3.   Plaintiff's motion to amend the Complaint (ECF No. 33) is DENIED.

4.   Defendants' combined motion for partial summary judgment (ECF No. 37) is GRANTED;

5.   Defendants' motion to strike Plaintiff's exhibit numbers three, four and five submitted in support of her memorandum in opposition to Defendants' motion for partial summary judgment (ECF No. 40) is DENIED as moot.

Plaintiff's claims against Defendant Stembel for battery and assault are the sole claims

remaining before the Court.


DATED this 14th day of April, 2015.

BY THE COURT:

RAYMOND P. MOORE
United States District Judge